The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. All right. I just caught the tail end of that. But I do believe that we are ready to go and that we are live streaming. This case is Case Number 4-22-0981, Gene Danielson v. William Weimelt and Sprouts, Inc. Counsel, could you state your appearances, please? Christopher Johnson for the appellant. Kurt Kepty for appellees. All right. Thank you, Counsel. Mr. Johnson, you may proceed with your argument. Thank you, Your Honor. May it please the court. My name is Christopher Johnson. I represent the appellate, Gene Danielson, and I would like to reserve five minutes for rebuttal. All right. As a matter of basic fairness, we need to ask ourselves the broader implications of all of the erroneous rulings that took place at the trial level. Those not only go beyond the denied summary judgment motions, the verdict itself, and the post-trial motion for judgment notwithstanding the verdict, but they go to the very essence of fairness and the future of the Supreme Court's holding in Voightkin v. DeBoer, which is based on fairness at trial. Our points are very simple. Each and every error would have been avoided had the trial court simply followed Voightkin and granted the motions before it. In denying the summary judgment on proximate cause and the necessity of treatment, the trial court did not follow the basic procedure of summary judgment under 5-2-1005, where there was no issue of material fact on the issues of proximate cause of injury and the necessity of the treatment. There was nothing for the court to consider other than the evidence in front of it. Mr. Johnson, can I ask you, you've stated that there is a, some of the questions here are de novo review and others are abusive discretion. Tell me what issues you think are de novo. I believe that the denial of the summary judgments fall under the de novo standard. I also believe that the motion for directed verdict falls under the de novo standard. And the case law for that I believe is Caruso versus M&O Insulation Company. It's 802 Northeast 2D 327 from 2003. So, I want to ask you then if, if you had never made a motion for summary judgment and made this as an objection at trial to the testimony that you're complaining of, would that be de novo or would it be abusive discretion? I think Voightkin even talks about discretion when it comes to applying exceptions to the rule and so forth. I believe if we got to the trial juncture before I raised this issue, then we would have been testing a discretion or abusive discretion. But the, because there is this test in Voightkin, but in this case in particular because of the similarity to Voightkin, factually, I believe it would still fall under de novo. And you're aware that as a general rule, the denial of a motion for summary judgment is not appealable because it merges into the ultimate judgment. Yes. Why doesn't that rule apply here? Well, because we filed a motion for summary judgment, we filed motions to reconsider, followed those up with additional motions for directed verdict. We had motions in limine regarding this Voightkin issue to bar it from being heard at trial where counsel interjected speculative evidence. And we also brought this issue up post-trial. How does that affect whether or not the denial of a motion for summary judgment is appealable? Well, it's true that they do merge. But at the same time, we have these other motions that fall under this de novo standard. So we definitely would then look at it as an abusive discretion. And when the Voightkin court looked at the discretion for a similar event where the other side had no evidence and these types of motions were denied, the Voightkin court clearly stated that there was no discretion for the court to, or the discretion that the court actually exercised was an abuse of that discretion, was improper. So the test that they followed was one that they conclusively realized on the spot wasn't followed. I have another question for you. You filed motions in limine to keep out any testimony about what the plaintiff may have said to the doctor and evidence pertaining to any alleged prior injuries that she had to the same part of the body, based on your argument that because the defense presented no expert testimony as required by Voightkin, this was not admissible evidence. And the trial court denied your motion limited. Did it not? The trial court did. So here's my follow up is this. Normally, the rule of the civil proceeding is that a ruling on a motion limited is interlocutory and may not be the basis of an appeal. Unless at the time the evidence is offered a trial by the opponent, in this case, let's assume it's offered by the defendant in the first instance, it's subjected to resurrecting the same arguments made in the motion limited. In this case, and I understand technically why you'd want to do it. We've all been trial lawyers ourselves at one point. You didn't want the jury to be surprised by this testimony and you elicited it yourself, did you not? Yes, I did, based on the rulings that we previously had. Well, so my question is, having done that, and I know it's put you in a difficult spot tactically, but since you initiated the evidence before the jury, are you barred on appeal from raising this as an issue? If not, why not? I think, Your Honor, you could even see this in the record when Judge Larson referred to it as pick your poison. Yes. And so then for the litigant and for me as a tactical choice, we'd have to either decide to not put our best case on and then go through appeals, or we put our best case on. And I think that as a matter of policy for advocacy in our state, we should be putting our best case on each and every time. And judges shouldn't be disregarding the Supreme Court precedent to put a litigant in that position. Well, what about the precedent that says you have to object to the substance of a motion in limine that the trial court ruled against you to say certain evidence is going to be admitted over your objection, then you have to not only not introduce it yourself, but you have to object when the defense introduces it to preserve the issue for appeal. What is the exception to the rule that applies here other than you're in a tough spot? But I don't understand that as being a grounds to ignore the rule. Your Honor, so when I went through the trial strategy in this case, it was to follow what was done in Voightkin. And that included this directed verdict motion toward the end of the case, and then if need be, a motion for judgment notwithstanding the verdict. But the plaintiff in Voightkin didn't introduce this evidence himself. You did. The jury heard this evidence from you for the first time. You listed it. That's correct. It's not following Voightkin. But that's consistent, though, with the evidence that was presented as to relevance of the expert doctor's opinions and the basis for those opinions, which is in line with Voightkin. That's why we have to follow that specific line of logic. Didn't Voightkin provide that one exception to its prohibition or the requirements for expert testimony by the expert would be impeachment, where the plaintiff's doctor and the plaintiff herself could be impeached by testimony pertaining to prior injuries, part of the body of issue? Yes, Your Honor. That does come into play, but I believe there's a distinction when it comes down to the complexity of the type of treatment that's rendered by the physician. And when we look at the treatment in Voightkin related to the neck and the same part of the body rule, that that was considered too complex for a lay jury to understand. Here we have an aggravation of an underlying knee injury or knee problem that requires surgery, and it has that same level of complexity as Voightkin for the issue to be taken away from the jury. I'm not sure I understood. You're saying because it was too complex, the idea of impeaching the doctor and your client would not be legitimate? It wouldn't be legitimate for that reason and for the reason that for the relevancy of that issue, there needs to be a foundation laid. And that's why Voightkin requires the expert doctor for the defendant. What about the foundation for purposes of impeachment? This is a prior inconsistent statement by your client. And this was a significant omission, arguably, from the doctor who expressed his opinion that your client's injury was based upon the automobile accident where she was rear-ended. But he conceded, if I understand, that he wasn't told anything about any prior injuries or problems she had with the knee by her or any medical records, and yet claimed that none of that, had he known, would have affected his ultimate opinion that it was still due to the automobile accident. Isn't that legitimate impeaching of his expert testimony? Those types of questions, Your Honor, were asked in the discovery deposition, and it did not change Dr. Tallarico's opinion. Isn't this legitimate for the jury to hear, however, as they are evaluating his opinion? The only limited reason that it would have relevance would be if she was suffering from some type of problem in the past and it went to lessen or lower her damages. It would go to that. But in this particular case, when it came down to the cross-examination that counsel did of the doctor, Dr. Tallarico, in his discovery deposition, counsel didn't take the first treatment note and ask the questions about that first treatment note, which was clarified in a trial about this woman. And when it comes down to this idea that she wasn't a good historian, this type of testimony that came in that first note revealed that she had had some underlying problems. So Dr. Tallarico was testifying without having looked at this first treatment note. He didn't have his treatment notes in front of him at the discovery deposition. He had what counsel provided to him. Well, it was not just treatment notes. Didn't he admit at trial that your client never told him anything about any prior injuries or treatment? What did that mean? I believe that came up in the discovery deposition. Didn't you elicit that at trial? Wasn't that information presented to the jury? I elicited the evidence that he had from reviewing her old medical records at trial. So it brought up the old problems. Boykin didn't involve an issue of summary judgment. Boykin involved the presentation of the evidence based on the then same part of the body rule where it was routinely admitted. And the Supreme, if I believe our objection, and the Supreme Court said, that's right. That's when they established the Boykin rule. But there was no summary judgment in that case. He said, this one is like it. Here we have a summary judgment argument you're attempting to raise, but there was none of that in Boykin, was there? It's my understanding, Your Honor, that there was no summary judgment in Boykin and that it was a directed verdict type of an issue. And on the question of the discretion, as we talked about, whether or not the impeachment of Dr. Tallarico and the plaintiffs falls within what the Supreme Court was musing about in Boykin, it's your position that's not a discretionary call by the trial court? So in Boykin, and I quote, you know, consequently, we conclude that if a defendant wishes to introduce evidence that the plaintiff has suffered a prior injury, whether to the same part of the body or not, the defendant must introduce expert evidence demonstrating why the prior injury is relevant to causation, damages, or some issue or some other issue of consequence. And so what we have here is we have... Counsel, would you mind reading the next line? Yes, really. This rule applies unless the trial court and its discretion determines that the natures of the prior and current injuries are such that a layperson could readily appraise the relationship, if any, between those injuries without expert assistance. So the Boykin court does indicate this is a discretionary gatekeeping function of the trial court. Your Honor, that's true, but in Boykin, they applied the principles to the facts before them. And in doing so, they said that they don't need to examine every piece of evidence, that their review reveals that the trial court erred in allowing defendant to introduce evidence of the plaintiff's prior neck problems, and that this alone denied plaintiff a fair trial. And that's exactly what we have here, where evidence is being introduced of the same body problem when there's no underlying medical testimony, competent medical testimony to show why it's relevant. And that was my concern at the summary judgment level, the directed verdict level, and judgment notwithstanding the verdict. Counsel, wasn't Dr. Tallarico's proximate cause opinion based solely on plaintiff's assertion to him that she hadn't had any problems with that area of her body prior to this accident? He testified that way, I believe, in his discovery deposition. Well, so is the fact then that defendant provided evidence that directly disputed the sole basis for the plaintiff's expert's proximate cause opinion, isn't that something that would be something that a lay person could simply take into account in assessing the weight to be given to the plaintiff's expert's opinion? Your Honor, as I understood it, the basis for Dr. Tallarico's opinions related to his clinical training, his expertise, his skill, and the recovery of the plaintiff in response to the surgery. So when you put all those things together, the answer then, I believe, is no. And if this really was Dr. Tallarico, you know, as you hear in his discovery deposition, maybe Dr. Tallarico should have been impeached about his sole basis. But if Dr. Tallarico's sole basis was what she said and he believes her, well, then I believe we'd be at that. But I don't think that that's the facts before this court. Well, you answered Justice Harris's question. You've answered a few of mine as well. And I don't understand the distinction drawing when you were asked what Dr. Tallarico testified to. He said, well, that was his deposition. I don't understand. We don't care what his deposition was, counsel. We're talking about what's the evidence in front of the jury. Was that evidence in front of the jury? The evidence in front of the jury was that there was an aggravation of an underlying condition. Was there evidence in front of the jury that Dr. Tallarico relied, if not exclusively, almost exclusively, I think exclusively, on what your client told him? Isn't that testimony that the jury heard? The testimony is that he relied on my client. I bet this is a yes or no question. Did the jury hear that? Yes, Your Honor. Well, because the Supreme Court in Boykin said that the prior injury may be relevant as impeachment. For example, plaintiff may be examined with respect to his failure to disclose to his physician that he has previously suffered an injury to the same part of the body. Similarly, an expert may be examined about whether his opinion would change if the expert was aware of the plaintiff's prior injuries. Why don't those two sentences directly apply to what happened in this case, given what Dr. Tallarico said about the plaintiff not telling him anything about it? Your Honor, I think this whole idea of the plaintiff not telling the doctor about this when she's under his care comes from his testimony at the discovery deposition. Counsel, let me stop again, please. I don't care who testified to what at the discovery deposition. So it's not helpful when you make that reference. My question is, is there testimony before the jury? Is that testimony in front of the jury? And if it isn't, then it doesn't matter what anyone said at the deposition. The testimony that I wanted to draw the distinction was the evidence deposition testimony, which when it came down to the basis of his testimony, it's based on the first treatment note. And the first treatment note discusses that she has an underlying condition. So even though she's not talking about some type of an injury from 10 years before, there was testimony that was elicited regarding an underlying condition. So there was a bit of a distinction. Isn't that legitimate impeachment? Shouldn't the jury, as they evaluate your client's testimony and credibility, hear that on the very issue, which is the condition which is at issue, her need that she didn't mention anything about this to her treating physician? Why shouldn't the jury hear it? Your Honor, I believe the jury should never hear evidence like that unless there's a foundation laid by the other side that shows that it's actually relevant. And that when you draw between the discretion that a court could have in doing so, I believe that the issue is far too complex when you're having surgical opinions and aggravation of underlying condition opinion for the jury to be able to hear that without medical assistance with a contrary opinion to show why it's relevant. All right, Mr. Johnson, you're out of time. You'll have time and rebuttal. Mr. Thank you. Thank you. May please the court counsel. I'm Kurt kept the I represent the defendants appellees. And I was going to begin in a different vein but justices you are correct. Appellants brought this issue out in their case in chief. Number one. So it's fair game for me to cross examine any issues that they brought up during their direct examination in their case in chief. But beyond that, are you arguing that because they initiate that they presented the evidence themselves that they have forfeited the opportunity to raise this issue on appeal, and the denial of the motion eliminate, which they saw. Yes. Among other arguments that I had but yes. Well then I want to ask you the same question I asked Mr. Johnson it seems to me that as the trial judge realized, he's in a very tough situation. Certainly, his motion eliminate based on Boykin was a colorable argument, and something which I think the trial court considered seriously and in the court's judgment denied, but having denied it. Then what's the plaintiff supposed to do. All trial lawyers know it's a bad business. If weaknesses in your case are essentially hidden from the jury and brought out by the other side. So if Mr. Johnson to preserve this issue. Never brings out this evidence himself and waits for you to bring it out in cross examination or the defense case in chief. And he then objects which is required to preserve the issue of denial of emotion eliminate. There's every reason to think trial court consistent with its earlier rulings will deny the motion. Then the jury hears for the first time all of this potentially damaging information. And even if it's not argued to them, they might very well think well, what kind of a guy was this guy Johnson who hid all of this stuff from us and it's a good thing when Mr. finally brought out the real truth of what happened, etc. You know how that gets played. As do I. It seems to me that under these circumstances. Mr. Johnson is in a real trick bet. Why shouldn't there be some exception. I'm not sure how to phrase it, but some exception permitting under these unique circumstances, him permitting him to introduce this evidence as he did himself through the testimony of Dr. bringing out the inconsistencies or other potentially damaging things that surely you would. What about that. Well, the law is the law. And you are correct, you pick your poison. These exceptions and just like voice in itself as we've discussed. How about the law being motions eliminate must be objected to a trial, but under these peculiar circumstances, etc. You know, as a matter of policy, I suppose what I'm saying is why. Why should the adverse than losing party of emotion Monday like this plaintiff here be in the trick bag of having to wait for you to introduce the damaging evidence, or why shouldn't it be permitted to introduce it himself as he did. So as to reduce the potential damage to his overall case by having you reveal the bad stuff instead of him. What's the policy justify that, other than the laws the law. Well, quite honestly, we'd be here right now, whether we had plaintiff, bring it in his case in chief, or I might be the appellant right now, but we'd be here today, regardless. And that's why we follow precedent, and we follow the law, and if you want to preserve it, you have to object. Those are the rules. Well, if it would have gone the other way, would still be on appeal, and more. This card could say that we are going to conclude that Mr Johnson is barred from raising this issue. The now the motion lemonade of the peculiar circumstances of what happened here. Even though he introduced the evidence which was subject to it, because there's good technical reasons for is not doing it and the policy doesn't make sense to make him sit there and say nothing. I keep asking you for a policy maybe I'm missing something here Mr Kemp key but you're the defense attorney in this case. It's your position that the plaintiff was required to sit there and say nothing until such time as you brought out, let's assume trial court was correct and saying boycott doesn't apply. And so you're permitted them to bring out to impeach both the planet when she testifies and Dr. Rico, with the various inconsistencies that are an issue and he has to just sit there. You think that's the good policy. Yes, I do. And I think it's the law I liken it to maybe an objection to jurisdiction. You already, what do you do, you go through the whole shemale and then you appeal. Or you can try to get a interlocutory appeal, but that doesn't always work. So sometimes you have to go the gamut. But if you're going to go the gamut. You have to follow the law and preserve the issue. Yes, I figured up a lot of your time on this I apologize you have other things you want to address so why don't you go ahead now and dress all the matters that you're on. I was just going to say. Number one, for the impeachment purposes that evidence of the previous condition was admissible. And when you take it in total. I mean we're looking at five years before 2007 when she had an injury, and then she had physical therapy she didn't recall that that really doesn't make sense. And I think the jury took that into consideration. And that taken alone, probably wouldn't allow for the visibility of that evidence but when you go through the whole history. She comes back in 2010 with Dr. And she had problems, and maybe she's not necessarily getting treatment at that point but then we get closer to the time of the accident. And the surgery post accident. You have the plaintiff taking hydrocodone for issues with her hands and knees. And this is right before all of this, and coupled with that the history that she gave Dr. So, really she had an extensive history, you given her age, given her arthritic condition that even a layperson knows is going to progress over time. So when you look at this, this information was admissible for relevance did you limit your argument. I'm sorry this admissible for impeachment. Did you limit your argument. In other words, how you treated the evidence in argument to just impeachment. No. I also proffered that evidence to negate causation. And again I'm looking at the evidence as a whole. It's really not a very severe impact accident, even Dr. going beyond mere impeachment and saying well this doesn't make medical sense. Actually I think I got that evidence through cross examination of Dr. He admitted that he didn't know when that when this will occur occurred because he didn't have pre accident studies. Likewise, he admitted that the arthritis predated the accident. And I believe that he would have testified, or he did testify that that is a progressive disease that just goes on with the daily activities of regular living. Right, but Tallarico said it was not significant and an argument you, you argued it was significant and you had no expert, saying that. Agreed, but a layperson could put that together, and that testimony from Dr Tallarico, when I asked him, are you telling me that this history is not significant, and he said no. A layperson could say, I don't agree with that. And that's why we have that jury instruction that says his testimony, they're going to be considered like any other witnesses. Mr. Kepke, is it important that arguably the sole basis for Dr. Tallarico's proximate cause opinion was plaintiff's history, given to him that she had not previously suffered an injury to that part of her body. Well, the fact of the matter is the initial notes, no problems, other than ordinary aches and pains. But I impeached, again, we're not going to talk about discovery depositions, we can talk about the evidence that was proffered to the jury. I had to impeach him to say the sole basis of his opinion was no problems, pre accident. And I agree that the note says what it says, and that evidence came in too. But once the doctor says something like that, you know, the discovery deposition is fair for me to impeach him, because he did say that in his discovery deposition, and I impeached him at trial for evidence that it was a sole proximate cause. I don't think that was a real big issue as far as the jury was concerned. Just mere fact that the plaintiff had a significant, okay, not significant, I won't use that term. She had a continual complaint of knee pain, dating back from when she fell five years before she saw that physical therapist. And granted, she didn't treat continually, but every step of the way within a few years, there's a complaint, a complaint, a complaint, and then she's on hydrocodone. And then she gives that history to Dr. Tallarico's nurse about an event that occurred just months before the accident issue. So taking the evidence as a whole, not just taking out one little item, really supports my position. That evidence is admissible, regardless of the fact that the plaintiff brought it out in her case in chief. Going back to Justice Dougherty's question, did you argue this evidence that you brought out from cross-examination Dr. Tallarico and from the plaintiff that argued was substantive evidence that showed that the injury wasn't as great as the plaintiff claimed? I argued that her condition that she presented for surgery was not related at all to the accident. So with regard to your, and with commendable candor, you answered yes to Justice Dougherty's question that you presented this substantively as well as for impeachment purposes. Was there any objection made by plaintiff at trial to your using arguably the impeachment testimony substantively? No. Okay, go ahead. So the trial court did not err in allowing this evidence. It was admissible for impeachable purposes, but also substantively in that. I did not have anybody say definitely not related, but by cross-examination through Dr. Tallarico, I think I could establish substantively that his testimony was not credible in light of the history that he was not aware of when he gave his opinion. And I don't think, I think that a lay person could listen to the evidence of, you know, back again, five years before 2007, all the way through and up until the time of the accident, that they could reasonably infer that this lady had problems. And she's going to eventually become a surgical candidate no matter what. And I think Dr. Tallarico testified to that too. And if you look at the surgical procedure, you know, he said torn meniscus, but really all he did was cut some edges, some fraying on the meniscus and he did an arthroplasty. And that was to combat the preexisting arthritis. He basically put in cartilage because the arthritis had taken over and there wasn't any cartilage there to cushion, you know, the bones. And I think a jury could infer that very reasonably through the testimony cross-examination of Dr. Tallarico. So if you'd like me to sum up, I can. Go ahead. All right. So we have impeachment purposes. That makes that preexisting condition evidence relevant. Plaintiff brought it up in the case in chief and did not preserve it for appeal by objection during the course of trial. Plaintiff said that she didn't have preexisting problems other than aches and pains, but we know that she fell five years before 2007 and she had a course of physical therapy in 2007. She told Dr. Kuduros' nurse in 2010. And again, this might have been some other issue that was being addressed, but in the notes, she had knee problems the following or the preceding winter when she fell then. And then she gave a history in 2015 that was bone on bone. That was her cataract surgery, but it's still in the record. And, you know, she had to get that information bone on bone from someone and she testified to the creaking and clicking that she had in her knee. And this is 2015. Again, she's on hydrocodone before the accident for joint pain. Granted, it included her hands, but it also included her knees. And then again, she gives that history to Dr. Tallarico's nurse on 3-20-18, just before the surgical procedure of June of 2018. Her problems began in November of 2017. And we know that pain, wax, and wanes, even a jury can infer that, a layperson can infer that or know that without the need of expert testimony. So she had problems that would come and go. It would get better sometimes. It would get worse sometimes. And that's just the progression of the disease. So, you know, a couple of that with the fact that those photographs of the cars really didn't show much in damage. Dr. Tallarico says that's not the mechanism of injury. The plaintiff said she was hit at 40 miles an hour. That's not supported by the photographs. And Dr. Tallarico's testimony was that the history the plaintiff gave him, or at least he inferred, that it was a high-impact accident. So really, taking the evidence as a whole, applying the law, the jury filed for the defendant either because the plaintiff wasn't injured or the complaints and need for surgery weren't proximately caused by the accident. Thank you. Thank you, Mr. Kepke. Mr. Johnson, rebuttal argument? Thank you, Your Honor. We heard from Mr. Kepke what he thinks a jury can do. And we know that juries can do many things. And often when too much discretion or the wrong type of discretion is allowed of the jury, they make errors, which is what happened in this case. The same part of the body rule wasn't followed by Voykin. They didn't agree with it. And the reason why is that how do we know that one injury from five years ago, five months ago, five weeks ago, has any relevance or bearing as it relates especially to proximate cause? You heard from counsel about impeachment of Tallarico and what he thinks he elicited or what he could have elicited in front of the jury. But when he's talking about something like hydrocodone, when it relates to knee pain or relates to joint pain or relates to this woman's autoimmune condition, if counsel had an expert at trial to explain why any of that mattered, then we wouldn't be here. The same thing goes on when counsel is talking about the two different surgeries that were done here, whether there was a fraying of the meniscus or a tear and whether or not the total knee replacement was needed or at least a partial knee replacement was needed. Well, Dr. Tallarico testified that the conditions were caused by the crash and he testified that the treatment was necessary because of the crash. If counsel had a doctor that said the opposite, we wouldn't be here. Now, counsel also talked about what he thinks he elicited from Dr. Tallarico at trial under this whole idea that a jury should always be able to see the credibility of experts. Well, we never should have been at that point where the credibility of Dr. Tallarico on an uncontested issue of proximate cause and necessity of treatment should have ever been even argued. You say uncontested, counsel, but it wasn't admitted by defendants. This was a contested issue. It was contested, but there was no evidence to support why what they wanted to contest was relevant. Can't an opposing party simply attack the credibility of the other party's witnesses, including expert witnesses? Yes. And even without an expert of their own, it doesn't mean that a jury must accept the opinions of the lone expert witness. Would you agree? I would say that ordinarily, yes, but in this particular case, because of the complexity of the injury, the complexity of the issue, this is something that the jury shouldn't have been allowed to decide. And it's also why I filed the motion for a directed verdict. The evidence was overwhelmingly in favor of the plaintiff, the appellant here. So if you look at where we are now with the directed verdict, and you look at all the evidence that actually was in trial as it relates to proximate cause and as it relates to the necessity of the treatment, and as it relates to what Dr. Tallarico said under cross-examination about the prior injuries or prior problems not having significance to him or to his ultimate opinions, we end up in a situation where a directed verdict should have also been granted. And the same thing happens after trial when we get to judgment outstanding the verdict. It's the same evidence. It's overwhelming. It favors the plaintiff. Both motions should have been granted. I think that this also gets into this denial of the motion in limine that in a case like this, when an error is made, counsel wants to claim that we're waiving all ability to appeal or all these issues that have come up from error after error after error in this trial that are only compounding the problems, only compounding the fairness at trial. If we didn't have so many errors going on with all of these motions, then we wouldn't be in a situation where we're even wondering about waiver. So the directed verdict was one of the final ways to take this issue from the jury as it relates to the relevance that we showed, the burden of proof that we met, and the things that counsel just simply did not show about approximate cause, necessity of treatment. That wasn't done here. And for these reasons, we asked this court to reverse the rulings of the trial court and either enter a new trial or simply reverse and give instructions for the trial court to enter an award for the medical bills based on this overwhelming evidence. And I thank you on behalf of my client for your time today. All right. Thank you, Mr. Johnson. Thank you both for your argument. The court will take this matter under advisement.